**Preston HUGHES, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 70901.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 9, 1992.

Opinion Granting Rehearing June 23, 1993.

Rehearing Denied Nov. 24, 1993.

Certiorari Denied June 6, 1994.

See 114 S.Ct. 2184.

---

Joseph J. Finkel, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Linda A. West and Charles A. Noll, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for State.

## OPINION

CAMPBELL, Judge.

Appellant was convicted of capital murder. V.T.C.A. Penal Code § 19.03(a)(6). Upon the jury's affirmative answers to the two issues submitted at punishment, the trial judge sentenced appellant to death. *See* Art. 37.-071(b)(1), (b)(2), and (e), V.A.C.C.P.[1] Appellant raises twelve points of error in this direct appeal. We will reverse appellant's conviction on the basis of our disposition of his fourth point of error, and address the one point of error challenging the sufficiency of the evidence on the second punishment issue. *Lane v. State*, 743 S.W.2d 617, 629 (Tex. Crim.App.1987), *cert. denied*, —— U.S. ——, 112 S.Ct. 1968, 118 L.Ed.2d 568.

In his eighth point of error, appellant contends the evidence at trial is insufficient to establish that he would commit criminal acts of violence that would constitute a continuing threat to society. In reviewing the sufficiency of the evidence to support an affirmative answer to the second punishment issue, this Court utilizes the same standard of review for judging the sufficiency of the evidence to support a conviction, *viz:* we view the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the punishment issue beyond a reasonable doubt. *Black v. State*, 816 S.W.2d 350, 352 (Tex.Crim.App.1991), *cert. denied, sub. nom., Black v. Collins*, —— U.S. ——, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992). When deliberating on the punishment issues, the jury is entitled to consider all evidence

---

1. Since appellant's trial, Art. 37.071 has been amended by the 72nd Legislature. V.A.C.C.P. Art. 37.071 (Vernon Supp. 1991).

admitted at both phases of trial. We therefore proceed to review that evidence.

The record reflects that officers of the Houston Police Department discovered two persons—one still alive—in a vacant field in Harris County on September 26, 1988. The victims, S____ C____ and M____ T____, had both sustained multiple stab wounds. The aorta and jugular vein of each victim had been severed.

Houston police officer Donald Hamilton spoke with S____ C____ at the scene before she died. S____ C____ informed Hamilton that someone named "Preston" had tried to sexually assault her and then had stabbed her. Based on this information, the police officers went to an apartment complex located approximately 100 yards from the vacant field. The police requested and received a list of apartment tenants from the manager of the complex. Appellant was the only person named Preston on the list.

Around 2:30 a.m. on September 27, the police went to appellant's apartment. Appellant admitted the officers into his apartment and answered some questions, none of which mentioned the investigation of S____ C____'s and M____ T____'s deaths. Appellant agreed to accompany the officers to the police station for further questioning. At the police station, the interrogation of appellant continued while the police conducted a computer inquiry to determine whether appellant had a prior criminal record. The inquiry revealed that appellant had been involved in "some sexual assault cases."

During the interrogation, appellant admitted that he had become acquainted with S____ C____ through a mutual friend. Based upon (1) the proximity of appellant's residence to the scene of the offense, (2) the computer information about appellant's involvement with past sexual assault cases, (3) the statement from S____ C____ that "Preston" had attacked and tried to sexually assault her, and (4) the admission from appellant that he knew S____ C____, the police

arrested appellant at 4:30 a.m. on September 27. After arresting appellant, the police informed him of his *Miranda*[2] rights and continued to interrogate him. Over the course of several hours, appellant confessed to killing S____ C____ and M____ T____.

During the punishment phase of the trial, the State offered testimony and documentary evidence showing that when appellant committed the murders of S____ C____ and M____ T____, he was already serving two ten-year probated terms pursuant to a deferred adjudication judgment. Appellant had been placed on deferred adjudication for committing aggravated sexual assault and aggravated assault[3] against a thirteen-year-old female, T____ H____. T____ H____ testified that appellant had raped her in 1985 and had forced her to swear to be his girlfriend. Additionally, T____ H____ testified that appellant told her not to contact the police because he kept her home under surveillance.

Despite this threat, T____ H____ did contact the police and appellant was charged with aggravated sexual assault. As the trial date was approaching in late 1985, appellant confronted T____ H____, told her she should not testify against him, and fired a gun at her. T____ H____ informed the police of this incident, and appellant was charged with aggravated assault. Beyond T____ H____'s testimony, the State also introduced documents wherein appellant was found guilty of the offenses and received two sentences of deferred adjudication for ten years.

The record also contains evidence that appellant had been accused of sexual assault in the state of New York and that appellant had failed to attend a number of his scheduled meetings with his probation officer, Mikal Klumpp. Klumpp testified that he tried to accommodate appellant's schedule by remaining at the probation office later than he normally would. Despite Klumpp's efforts, appellant still missed numerous scheduled appointments.

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** The aggravated assault conviction has since been vacated by this Court on the basis of the

trial court's failure to admonish appellant on the applicable range of punishment. *Hughes v. State,* 833 S.W.2d 137 (Tex.Crim.App.1992).

**146**

Appellant presented punishment evidence in the form of testimony regarding his character. While few of the witnesses stated that they were aware of appellant's past legal problems, six of appellant's friends testified that he was a good-natured person and not prone to violence. Appellant's mother testified to the same effect. She also testified that, in her opinion, appellant did not pose a threat of future violence.

The second punishment question required the State to prove that appellant would, more likely than not, commit violent criminal acts in the future so as to constitute a continuing threat to society, whether he was incarcerated or not. *Smith v. State,* 779 S.W.2d 417, 421 (Tex.Crim.App.1989). In weighing the evidence, the jury could consider a number of factors, including the existence of a prior criminal record, the severity of any prior crimes, and the calculated nature of the defendant's conduct. *Stoker v. State,* 788 S.W.2d 1, 7 (Tex.Crim.App.1989). Moreover, the jury may return an affirmative answer to the second punishment issue based solely upon the facts and circumstances of the case being prosecuted. *Farris v. State,* 819 S.W.2d 490, 498 (Tex.Crim.App.1990); *Muniz v. State,* 573 S.W.2d 792, 795 (Tex.Crim. App.1978).

Appellant argues that the evidence is insufficient to support the jury's affirmative answer because no one testified that appellant "had a bad reputation for peacefulness, nor was any psychiatric evidence offered on the issue of future dangerousness." Appellant also argues that the facts of the charged offense alone are not brutal enough by themselves to "justify the death sentence." The State argues not only that the facts of the instant offense are sufficient to warrant the death penalty, but also that the remainder of the evidence adequately demonstrates the likelihood that appellant would commit criminal acts of violence in the future.

Appellant's eighth point of error is without merit. The evidence shows that appellant raped T____ H____ just three years before he attacked and murdered S____ C____ and M____ T____. In an effort to silence T____ H____, appellant threatened her and fired a gun at her. Moreover, appellant's attack upon S____ C____ and M____ T____ was cold and calculating, as evidenced by the severing of each person's aorta and jugular vein. Additionally, the victim who identified her attacker as "Preston," was a fifteen-year-old girl, approximately the same age as the victim T____ H____. Demonstrably, appellant has a history of sexually assaulting young teenage girls.

While the State did not introduce any psychiatric testimony on the issue of future dangerousness, a jury may return an affirmative answer without such evidence. See *Cockrum v. State,* 758 S.W.2d 577 (Tex.Crim.App. 1988); *Crawford v. State,* 617 S.W.2d 925 (Tex.Crim.App.1980). On this record, we conclude that a rational jury could have found beyond a reasonable doubt that appellant constituted a continuing threat to society and overrule appellant's point of error eight.

In his fourth point of error, appellant asserts the trial court abused its discretion in denying his challenge for cause to prospective juror Faulkner. Appellant argues Faulkner was properly challengeable for cause pursuant to Art. 35.16(c)(2), V.A.C.C.P., which provides:

(c) A challenge for cause may be made by the defense for any of the following reasons:

\* \* \* \* \* \*

(2) That he has a bias or prejudice against any of the laws applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or the of the punishment therefor. .

Appellant bases this challenge on Faulkner's understanding of the term probability as that term is used in Art. 37.071(b)(2).[4] The record reflects the following colloquy during Faulkner's voir dire examination:

Q. (by the prosecutor) Okay. Now, the word probability presents a problem some-

---

**4.** Article 37.071(b)(2) asks the jury "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

times. To some people who may be from an engineering kind of background, probability can range anywhere from a zero percent probability to a hundred percent probability or anywhere in between. Some people might consider probability being something more than 50 percent. Some people might say it's more likely than not. What are your feelings about the word? When the question asks you: Is there a probability the defendant would commit future criminal acts, how would that word play in your mind? What would you think it would mean?

A. (by Faulkner) I would think it would mean to me—and I do have a technical background—that if there is a percentage chance of this occurring, whether it is property damage, et cetera, okay? Then I could answer that yes.

Q. So, you would put it on kind of a percentage basis, maybe 10 percent *possibility* [5] or something of that nature?

A. Yes, sir.

Q. Would there be a certain percentage point that I would have to reach before you would be able to answer that question yes beyond a reasonable doubt? I mean, like, would you have to have a 10 percent probability or 20 percent probability or 50 percent probability?

A. I wouldn't—I could answer that *as long as I had a percent.*

Q. Okay.

A. There is no limit on that. *If it's 10 percent, then I would have to answer it yes.*

Q. Depending on the facts of the case.

A. The facts of the case, yes.

Defense counsel then questioned Faulkner on this issue to fully understand his position.[6] The record reflects the following:

Q. (by Defense counsel) Let's talk about your answers related to the probability on Question 2. I understood your testimony, your statement to be that the probability of *any percentage* would cause you to vote yes. Is that a fair summation of what you said?

A. Yes, sir.

At the conclusion of Faulkner's voir dire examination, defense counsel moved that "based on his answers related to the probability issue on Question 2 [he] should be stricken for cause[.]" The trial judge denied the motion, the State accepted the prospective juror, but defense counsel peremptorily challenged him.

The term "probability" is not statutorily defined, and this Court has repeatedly held the trial court does not err in refusing to instruct the jury as to the definition of the term "probability" as used in the second punishment issue. *See Earhart v. State,* 823 S.W.2d 607, 632 (Tex.Crim.App.1991); *Caldwell v. State,* 818 S.W.2d 790, 797 (Tex.Crim. App.1991), and cases cited therein.[7] According to Art. 3.01, V.A.C.C.P., therefore, the

5. Unless otherwise indicated, all emphasis is supplied by the author.

6. By saying "even though such inquiry [into Faulkner's conception of probability] could have been totally barred by the trial judge, and appellant's counsel would have known nothing of Faulkner's views on 'probability'", the dissent contends a majority of this Court decides, "based upon ambiguous testimony that the trial judge allowed to be solicited," that the trial judge abused his discretion. *See* dis. op. at p. 159. The dissent, in fostering the idea that the trial judge could have foreclosed such questioning, ignores this Court's recent pronouncements in *Woolridge v. State,* 827 S.W.2d 900 (Tex.Crim. App.1992), where we discussed the voir dire examination of a prospective juror's understanding of an undefined term which will be used in the court's charge to the jury, *viz:* reasonable doubt. The Court stated that the fact that no definition is

provided for a term does not render irrelevant a prospective juror's understanding of that term. *Woolridge,* 827 S.W.2d at 906. Indeed, "the understanding becomes more crucial to the intelligent exercise of either the State's or the defendant's peremptory challenges[.]" *Id.* We held there the parties were entitled to question the venireperson on his understanding of an undefined term that, as here, was contained in and crucial to an issue in the court's charge to the jury. *Id.* In so doing, this Court overruled implicitly *Cuevas* and its progeny which held that inquiry into an undefined term may be foreclosed by the trial judge. The dissent therefore errs in relying on such caselaw.

7. Moreover, a trial judge's refusal to define the term poses no constitutional problems. *Lewis v. State,* 815 S.W.2d 560, 562–63 (Tex.Crim.App. 1991).

term is to be taken and understood in its usual acceptation in common language.[8]

Appellant directs us to *Cuevas v. State,* 742 S.W.2d 331 (Tex.Crim.App.1987), where this Court recognized various dictionary definitions of the term "probability" when addressing the same issue confronting us in the cause *sub judice.* In *Cuevas,* we stated:

> Dictionary definitions of 'probability' include: 'likelihood; appearance of reality or truth; reasonable ground of presumption; verisimilitude; consonance to reason.... A condition or state created when there is more evidence in favor of the existence of a given proposition than there is against it.' *Black's Law Dictionary* 1081 (5th ed. 1979); 'Something that is probable,' with 'probable' meaning 'supported by evidence strong enough to establish presumption but not proof; likely to be or become true or real.' *Webster's New Collegiate Dictionary* (1980).

*Cuevas,* 742 S.W.2d at 347. In that case, the defendant challenged for cause a prospective juror on the basis of his understanding of the term "probability." The defendant contended the potential juror had a "faulty understanding" of the term as used in the second punishment issue. During his voir dire examination, the venireman stated in several ways his understanding of the term.[9] After reviewing the venireman's testimony, the Court rejected the defendant's contention that the venireman expressed a faulty understanding of the term "probability" and held the trial court did not abuse its discretion in denying the defendant's challenge for cause on this venireman. *Id.* at 347.

In the present case, appellant asserts Faulkner's responses are "drastically different" from those elicited from the venireman in *Cuevas,* and "[i]t simply cannot be doubted that 'probability' means more in special issue no. 2 than it did in the mind of Mr. Faulkner." After reviewing *Cuevas,* we agree with appellant. Faulkner's answers during his voir dire indicate that he understood "probability" as any percent *possibility* rather than as a "likelihood" or "good chance". In its usual acceptation, a "probability" is something more than a "possibility." [10] As this Court stated in *Smith,* 779 S.W.2d 417, 421, in which we relied on *Cuevas,* "we know that the second special issue calls for proof of more than a bare chance of future violence." Requiring more than a mere possibility that the defendant would commit criminal acts of violence and would constitute a continuing threat to society prevents the freakish and wanton assessment of the death penalty.

Since Faulkner understood "probability" as only a "possibility" [11], he was properly challengeable for cause. We hold the trial court abused its discretion in denying appellant's challenge. Pursuant to *Harris v. State,* 790 S.W.2d 568, 581 (Tex.Crim.App. 1989), appellant has demonstrated that this error was reversible. Appellant's fourth point of error is sustained.

The judgment of the trial court is reversed, and the cause remanded to the trial court.

---

CAMPBELL, Judge, dissenting.

Based upon vague portions of the voir dire record, the majority opinion concludes that the trial judge abused his discretion in denying appellant's challenge for cause of venireperson Charles Faulkner. I cannot agree with the majority's rationale.

---

**8.** Article 3.01 provides:

> All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined.

**9.** The prospective juror stated, *e.g.,* that probability "implies that it is a good chance that it would happen." "[M]y definition would be that there is a strong potential for that act to be repeated. Not that it is likely to happen, but there is a strong potential for it to happen;" "stronger than possibly;" etc. *See* 742 S.W.2d at 346.

**10.** *Webster's New Collegiate Dictionary* gives the following as an example of the use of the word "possible": "it is possible but not probable that he will win."

**11.** The dissent asserts that Faulkner's voir dire testimony was ambiguous. *See* dis. op. at p. 159. On the contrary, we find the testimony is quite clear and straightforward, and that the quoted portions of the voir dire upon which the dissent relies neither contradict nor rehabilitate the juror's previously stated views.

A trial court should grant a challenge for cause only if a potential juror's statements indicate that the juror's views "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and oath.' " *Cockrum v. State,* 758 S.W.2d 577, 592 (Tex.Cr.App.1988), cert. denied, 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989), quoting *Sharp v. State,* 707 S.W.2d 611, 620 (Tex.Cr.App.1986), cert. denied, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). A trial court's decision to grant or deny a challenge for cause is subject to appellate review under an abuse of discretion standard. *Cockrum,* 758 S.W.2d at 584. The rationale behind according great deference to the trial judge's decision to grant or deny a challenge for cause is that "such a finding is based upon determinations of demeanor and credibility that are particularly within a trial judge's province" because the trial judge sees the jurors and hears their testimony. *Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985).

Based upon the portions of the voir dire record quoted in the majority opinion, the majority concludes that venireperson Faulkner was biased against the law pertinent to the second punishment issue,[1] upon which appellant was entitled to rely, in violation of Article 35.16(c)(2).[2] The *remainder* of the voir dire record, however, indicates that Faulkner harbored no such bias. During voir dire, other exchanges were as follows:

PROSECUTOR: ... [W]ould you be able to, having found someone guilty of that offense, if the evidence called for it, answer these questions, the Special Issue No. 1 and Special Issue No. 2 in the negative? If that's what the evidence showed you?

FAULKNER: In the—

PROSECUTOR: No, would you be able to answer them no if that's what the facts showed you?

FAULKNER: Yes, sir.

PROSECUTOR: In other words, its the burden on the State to prove to you beyond a reasonable doubt that you should answer these questions yes before you should answer them yes?

FAULKNER: Yes, I understand that, yes.

PROSECUTOR: If the State doesn't meet that burden, would you be able to answer the question no?

FAULKNER: Yes, sir.

PROSECUTOR: The fact that a death sentence is out there or a life sentence, depending on the responses, wouldn't influence your answer to those questions?

FAULKNER: Yes, sir.

PROSECUTOR: You're going to decide it on the facts of the evidence presented?

FAULKNER: That is correct.

\* \* \* \* \* \*

PROSECUTOR: It's for the State to prove that the defendant is guilty, not for him to prove he's not guilty. You understand and agree with that principle?

FAULKNER: Yes, sir, I sure do.

\* \* \* \* \* \*

PROSECUTOR: Likewise, on [Special Issue] 2, if I convince you beyond a reasonable doubt, you will answer yes?

FAULKNER: Yes, sir.

PROSECUTOR: You are not going to make me prove to you beyond any doubt that the answer should be yes?

1. At the time of appellant's trial, Article 37.-071(b)(2) of the Code of Criminal Procedure provided in relevant part:

(b) On conclusion of the presentation of the evidence [at the punishment phase], the court shall submit the following three issues to the jury:

\* \* \* \* \* \*

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

2. Article 35.16(c)(2) of the Code of Criminal Procedure provides:

(c) A challenge for cause [toward a potential juror] may be made by the defense for any of the following reasons:

\* \* \* \* \* \*

2. That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor.

FAULKNER: No, sir.

Additionally, appellant's counsel questioned Faulkner during voir dire. The following exchange occurred between Faulkner and appellant's attorney concerning the second punishment issue.

> DEFENSE COUNSEL: ... Could you ever, after finding somebody guilty of a capital murder, you, yourself—and you alone know this. As the judge told you, we're here to get your answers. Could you ever vote no on Question 2?
>
> FAULKNER: Yes, sir.

Initially, the trial court could have completely foreclosed any inquiry into Faulkner's conception of "probability." *Cuevas v. State,* 742 S.W.2d 331, 346 (Tex.Cr.App.1987), cert. denied, 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988); *Esquivel v. State,* 595 S.W.2d 516, 525 (Tex.Cr.App.1980), cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). Even though such inquiry could have been totally barred by the trial judge, and appellant's counsel would have known nothing of Faulkner's views on "probability," the majority decides, based upon ambiguous testimony that the trial judge allowed to be solicited, that the trial judge abused his discretion in failing to exclude Faulkner for cause. In making this decision, the majority relies upon language from *Cuevas.* I fail to see how *Cuevas* in any way supports the majority's position.

In *Cuevas,* venireperson Cullather was asked to define "probability."

> Cullather responded that "it implies that it is a good chance that it would happen ... [M]y definition would be that there is a strong potential for that act to be repeated. Not that it is likely to happen, but there is a strong potential for it to happen;" "stronger than possibly;" "less than likely ... probability is somewhere between likely and possible;" "somewhere between potential and likely;" "not necessarily 'more likely than not;'" "stronger than a potential;" "not that it was equivalent to potential, that it was somewhere between potential and 'more likely than not;'" "I don't believe that 'more likely than not' is to me a criteria;" "a strong likelihood that the act would be repeated;"

"a very strong potential of that individual to commit acts of violence."

742 S.W.2d at 346. This Court noted that the examination of Cullather covered ten pages in the record and provided a perfect illustration of how voir dire could continue interminably if counsel were allowed to question each prospective juror concerning every legal term involved in the case. *Id.* at 346–347. Cullather's comments were no clearer than those of Faulkner, yet the trial judge committed no abuse of discretion in failing to excuse Cullather for cause. *Id.* at 347.

In concluding that Faulkner's comments belie his bias, the majority relies upon dictionary definitions of "probability" mentioned in *Cuevas.* Those definitions included "likelihood; appearance of reality or truth; reasonable ground of presumption; verisimilitude; consonance to reason ... A condition or state created when there is more evidence in favor of the existence of a given proposition than there is against it." *Id.* These definitions lack consistency. That something is "likely" does not necessarily mean that more evidence favors the existence of that thing.

After reviewing the entire voir dire record, I cannot say that the trial judge clearly abused his discretion in denying appellant's challenge for cause. The quoted portions of the voir dire record upon which the majority relies are vague at best. Faulkner's comments reveal only his internal conception of "probability," a term that is undefined in law. His statements reveal no propensity to impose the death penalty in a freakish or wanton manner. Throughout the remainder of Faulkner's testimony during voir dire, he stated unequivocally that he would hold the State to its burden of proof, that he would base his answers on the facts of the case, and that he would not answer the second punishment question affirmatively "all the time." The trial judge observed Faulkner and found no grounds for excluding him from the jury. I would conclude that the trial judge acted within his discretion in refusing to exclude Faulkner for cause because Faulkner's views in no way would have impaired his perfor-

mance of his duty as a juror, and would overrule appellant's point of error four.

McCORMICK, P.J., and WHITE and OVERSTREET, JJ., join.

## OPINION ON STATE'S MOTION FOR REHEARING

MEYERS, Judge.

On original submission we granted appellant relief and reversed his conviction based on the trial court's denial of a challenge for cause for prospective juror Faulkner. This Court has now granted the States's second ground in their motion for rehearing. The State argues for the first time that "any error from the denial of the challenge for cause was cured because the trial judge did grant appellant one additional peremptory strike." Consequently, appellant now insists on rehearing that it would be unfair to allow the State to raise this new argument in their motion for rehearing. Because we will allow the State's argument, we overrule appellant's objection and their remaining points of error and affirm the judgment of the trial court.

### I.

Today, we are asked to assess the role of appellate courts in direct review cases. Specifically, we must determine what must be argued to an appellate court and what that court must review independently in reaching the merits of the arguments of the parties. Rule 74 of the Texas Rules of Appellate Procedure governs the preparation and filing of briefs in direct appeals to this Court. *See* Tex.R.App.P. 210(b). We have previously held there are times when, "as justice requires" or "in the interest of justice," an appellate court may consider a supplemental brief or a motion for rehearing to decide an issue not presented in the original briefs. *See Boyle v. State,* 820 S.W.2d 122, 141 (Tex. Crim.App.1991) (opinion on rehearing), *cert. denied,* —— U.S. ——, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992); *Rochelle v. State,* 791 S.W.2d 121 (Tex.Crim.App.1990).

■ Where an appellate court fails to address issues of whether error has been preserved or forfeited by the parties, the parties may call to the court's attention such failure in a motion for rehearing. This notice gives appellate courts opportunity to examine an issue possibly overlooked, thus promoting efficiency in our legal system. Just as a trial judge has certain independent duties to perform at a trial, when she fails to perform any of those duties the parties may object. Likewise, the parties in an appellate setting may object, through a motion for rehearing, to an appellate court's failure to address systemic requirements on original submission. This objection after the fact is not unfair to one party or the other, but rather it maintains the essential integrity of our system by forcing appellate courts to observe their systemic requirements. In these instances and in the interest of justice, the decision to grant the State's motion for rehearing is left within the sound discretion of our Court. *See, Boyle,* 820 S.W.2d at 141. Accordingly, the State's second ground in its motion for rehearing is granted to determine whether appellant preserved error in objecting to a venireperson based on a trial court's denial of a challenge for cause.

### II.

■ On original submission we reversed appellant's conviction based on the trial court's denial of a challenge for cause for prospective juror Faulkner. However on rehearing, the State argues that because the trial court reinstated one peremptory strike, appellant has failed to preserve error. In order to preserve error for a trial court's denial of an appellant's valid challenge for cause it must be demonstrated on the record that appellant asserted a clear and specific challenge for cause clearly articulating grounds therefor, that he used a peremptory challenge on that juror, that all his peremptory challenges were exhausted, that his request for additional strikes is denied, and that an objectional juror sat on the case. *Harris v. State,* 790 S.W.2d 568, 581 (Tex. Crim.App.1989); *Felder v. State,* 758 S.W.2d 760 (Tex.Crim.App.1988); *Payton v. State,* 572 S.W.2d 677 (Tex.Crim.App.1978).

■ In appellant's case, the trial court reinstated one peremptory strike.[1] Where a trial court reinstates peremptory strikes, to show harm, the party complaining on appeal must show that one additional juror sat on the case than the number of reinstated peremptory strikes. *Martinez v. State,* 763 S.W.2d 413, 415 (Tex.Crim.App.1988); *Bell v. State,* 724 S.W.2d 780, 795 (Tex.Crim.App. 1986). In this case, to show harm, appellant must show the trial court impermissibly denied his challenge for cause for *two* prospective jurors. That is, it is not sufficient for appellant merely to show that the trial court incorrectly denied his challenge for cause to prospective juror Faulkner, but rather appellant must show the trial court incorrectly denied his challenge for cause as to a second juror. Therefore we must further address appellant's complaint as to the propriety of the trial court's action concerning a second prospective juror.

■ In point of error five, appellant argues that the trial court erred in failing to exclude prospective juror Ignacio Nunez for cause since Nunez was biased against appellant in violation of Article 35.16(a)(9).[2] Appellant bases his claim of bias upon the fact that Nunez had been a member of the Houston Police Department for the past nine years. As evidence of Nunez's bias, appellant directs our attention to the following exchange between appellant's trial counsel and Nunez:

DEFENSE COUNSEL: Assume that the body of evidence that would lead somebody to a logical conclusion that a person was guilty of a capital murder was based essentially on the credibility of police officers who took a written statement from the defendant. Do you really believe that you could ever disregard the policeman's testimony that it was voluntary, regardless of the other facts, and throw out that confession and find the defendant not guilty?

NUNEZ: I believe that would be kind of hard to do.

DEFENSE COUNSEL: I understand. That's why I'm asking, as the judge said, we're not interested—we want your attitudes.

NUNEZ: Okay. Could it be thrown out, you say?

DEFENSE COUNSEL: Thrown out, find the defendant not guilty? Even though you believed that the confession was not voluntary but that it was true and the person was, in fact, really guilty of what he was charged with?

NUNEZ: No, sir, I don't think so.

DEFENSE COUNSEL: I understand that that would be tough, but your answer is that you could not do that?

NUNEZ: No, sir.

Based upon this exchange, appellant also argues that Nunez was excludable under Article 35.16(c)(2).[3] The State argues in response that the remainder of Nunez's testimony reveals that he was not biased against appellant, but was confused by the question from appellant's attorney.

Concerning appellant's challenge to Nunez, this Court faced an analogous situation in *Phillips v. State,* 701 S.W.2d 875 (Tex.Crim. App.1985), overruled on other grounds, *Hernandez v. State,* 757 S.W.2d 744, 752 (Tex.

---

1. Appellant argues in the motion for rehearing that the additional peremptory strike was granted for an identifiable venireperson. However, we disagree. The record indicates appellant's attorney identified five prospective jurors who were believed to have been improperly ruled upon by the trial court and requested five additional preemptory strikes. The trial court granted one additional preemptory strike but nothing indicates whether, if at all, it was granted for an identifiable prospective juror.

2. Article 35.16(a)(9) in pertinent part provides:
 (a) ... A challenge for cause may be made by either the state or the defense for any of the following reasons:

 \* \* \* \* \* \*
 9. That he has a bias or prejudice in favor of or against the defendant;

3. Article 35.16, in pertinent part provides:
 (c) A challenge for cause may be made by the defense for any of the following reasons:

 \* \* \* \* \* \*
 (2) That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor.

Crim.App.1988). In *Phillips,* we noted that had the challenged juror "clearly and consistently stated that he could not disregard an illegally obtained confession, he would have been subject to a challenge for cause." *Phillips,* 701 S.W.2d at 888. When the law had been clearly explained to the juror, however, he indicated that he would follow the law and disregard the confession. *Id.* Since the entire voir dire revealed that the juror was not biased, the trial court had committed no error in refusing to exclude him for cause. *Id.*

Likewise, the record of the entire voir dire of Nunez supports the trial court's refusal to excuse Nunez. In response to a question from the trial judge concerning whether he could follow the law and disregard an involuntary confession, Nunez answered, "Yes, sir." Nunez testified that appellant's attorney had "just explained it a little different[ly]. I didn't understand it, really." Nunez admitted that he "just got confused on that there." In response to clarified questions from appellant's attorney, Nunez unequivocally stated that he would disregard an involuntary confession and find a person not guilty of capital murder even if he knew the person had committed the crime.[4] On this record, we conclude that the trial court committed no abuse of discretion in refusing to grant appellant's challenge for cause regarding Nunez.

Because appellant fails to demonstrate that the trial court incorrectly overruled appellant's strike for cause of two prospective jurors, appellant's fourth and fifth points of error are overruled. The trial court committed no abuse of discretion in overruling appellant's challenge for cause regarding Nunez, and the reinstatement of one peremptory strike cured any error as to prospective juror Faulkner. We now continue with appellant's remaining points of error on appeal.

## II.

Appellant's points of error one, two, and three are interrelated. In point of error one, appellant argues that his confessions should have been suppressed because they were the product of an illegal warrantless arrest. In point of error two, appellant argues that certain physical evidence retrieved from his apartment should have been suppressed because it too was the product of an illegal warrantless arrest. In point of error three, appellant argues that the trial court erred in failing to grant his motions to suppress because his warrantless arrest was not supported by probable cause.

Appellant argues in points of error one and two that the State failed to justify his arrest according to the requirements of Articles 14.01 through 14.04 of the Code of Criminal Procedure. We will not address the substance of appellant's arguments concerning the cited provisions of the code because the record reveals that those arguments were not made to the trial court. Neither of appellant's pretrial motions mentions the articles of the code now cited on appeal, nor do they mention any substantive argument based on Articles 14.01 through 14.04. The statement of facts likewise contains no mention of those code provisions. If the objection urged on appeal differs from that urged at trial, nothing is presented for review. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990). Therefore, we overrule appellant's points of error one and two.

Concerning appellant's point of error three, however, his pretrial motion did allege that his arrest was not supported by probable cause. Therefore, we will address the question of whether the police had probable cause to arrest when appellant was arrested at 4:30 a.m. on September 27, 1988. According to appellant, the information "possessed [by the police] was insufficient to warrant a reasonable man to believe that Appellant had committed an offense." The State argues

---

4. The relevant testimony from the record reads:
 NUNEZ: I would throw it [the involuntary confession] out.
 \* \* \* \* \* \*
 DEFENSE COUNSEL: And find that person that you knew is [sic] guilty of capital murder not guilty?

NUNEZ: Yes, sir.

that appellant's arrest was supported by probable cause.

■ Probable cause exists "when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not," a particular suspect has committed an offense. *Castillo v. State*, 818 S.W.2d 803, 805 n. 4 (Tex.Crim.App.1991). A probable cause issue, however, cannot be analyzed with mathematical precision according to some generalized formula because the issue, by its very nature, presents "a quintessential example of the necessity for case-by-case determination based upon the facts and circumstances shown." *Woodward v. State*, 668 S.W.2d 337, 345 (Tex.Crim.App.1982). In determining whether probable cause exists, we are concerned with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*, quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949).

■ Appellant was not arrested until 4:30 a.m. on September 27, some two hours after he voluntarily accompanied the police to the police station.[5] At the time of the arrest, the police knew that S____ C____ claimed to have been sexually assaulted and stabbed by someone she knew as "Preston." The empty field in which S____ C____'s and M____ T____'s bodies were found bordered the parking lot of the apartment complex, only 100 yards from where appellant resided. Appellant was the only person living in that complex who was named Preston. At the police station, the police learned that appellant had a prior sexual assault on his record and that appellant knew S____ C____. On this record, we conclude that the State made at least a minimal showing that the facts and circumstances known to the police were sufficient to warrant a reasonably prudent person in the belief that appellant had murdered S____ C____, at the very least. Therefore, we overrule appellant's point of error three.

■ In point of error six, appellant argues that the trial court erred in denying his motion for mistrial, made during the guilt phase, concerning a witness' comment. The prosecutor asked the witness, police officer Theresa Ross, if she knew whom appellant had called from the interview room following his interrogation. Ross testified that she did not know precisely whom appellant had called, but that appellant had told her that he had called "his boss and his parole officer." Appellant objected, and the trial court struck the comment from the record and instructed the jury to disregard it. Appellant argues that the comment was prejudicial to him because he has never been on parole and the comment "obviously implied that Appellant had at least one prior felony conviction." In response, the State argues that the instruction to disregard cured any error.

■ The general rule is that a trial judge's instruction to disregard will be sufficient to cure any unresponsive answer. *Williams v. State*, 643 S.W.2d 136, 138 (Tex. Crim.App.1983). As Ross could have answered simply that she did not know whom appellant had called, her answer was unresponsive. Also, the reference to "parole" was undoubtedly inadmissible. The reference, however, was not embellished in any way and "was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard it." *Gardner v. State*, 730 S.W.2d 675, 697 (Tex.Crim.App. 1987). We overrule appellant's point of error six.

In point of error seven, appellant complains of the trial court's admission in evidence of three photographs of the bodies of S____ C____ and M____ T____ which were taken while the bodies were on an autopsy table. Appellant argues that the photographs should not have been admitted because the State failed to lay the proper predicate for admissibility. Appellant's complaint is that the identifying witness, Dr. Robert Jordan, could not "possibly testify that he [knew the pictures] fairly and accurately reflect[ed] what [was] shown in them." The

---

5. The trial judge entered findings of fact that appellant was not placed under arrest until 4:30 a.m. and that appellant's confessions were voluntary. Appellant's brief contains no challenge to these findings.

State argues that the proper predicate was laid under Texas Rule of Criminal Evidence 901. Additionally, the State argues that since previous testimony was elicited from two investigating officers concerning the wounds inflicted on S____ C____ and M____ T____, there was no error in admitting pictures that depicted those wounds.

Police officers Don Hamilton and Vincent Cook testified and described the wounds which are depicted in the pictures, without objection from appellant. "An objection to photographic evidence is waived if the same information contained in the photographs is conveyed to the jury in some other form." *Havard v. State,* 800 S.W.2d 195, 205 (Tex. Crim.App.1989). Appellant waived any objection by failing to object to the testimony which conveyed the same information to the jury.

 Also, Dr. Robert Jordan, an assistant medical examiner for the Harris County Medical Examiner's Office, verified the pictures. A witness who verifies a photograph need not have been the actual photographer, nor even have been present when the photograph was taken. *DeLuna v. State,* 711 S.W.2d 44, 46 (Tex.Crim.App.1986). There was no error in the trial court's admission of the photographs. We overrule appellant's point of error seven.

 In point of error nine, appellant argues that the trial court erred in refusing to grant his motions for mistrial made during the punishment phase. The motions were based upon questions from the prosecutor and "the exhibiting of inadmissible matter before the jury." The "inadmissible matter" appellant refers to is State's exhibit 50, a copy of a sworn complaint filed by one C____ H____ dated January 25, 1985, made out against appellant for a rape incident that occurred in Buffalo, New York.

The prosecutor asked T____ H____, another alleged sexual assault victim of appellant, "T____, did you find out after Preston raped you that he raped a girl in New York?" (i.e., C____ H____) The prosecutor also asked T____ H____, "Did you find out anything about Preston after he assaulted you?"[6] A

third question from the prosecutor inquired of T____ H____, "What did your mother say when she found out this man had gone out and raped another girl?" The trial court sustained each of appellant's objections to these questions and instructed the jury to disregard the initial question.

Later, appellant took the witness stand, and the prosecutor proceeded to question him about the rape allegations contained in exhibit 50. The prosecutor asserted that appellant had moved from New York to Houston "because in 1983, C____ H____, a 16-year-old girl in New York swore out a complaint that you raped her at knifepoint." Appellant's attorney objected, to which appellant responded, "Don't object. That was my ex-girlfriend. We went together." A short time later, the prosecutor was saying "I'll ask you to explain why she swore in a sworn affidavit she claimed you grabbed her at knifepoint when she was—," when appellant's attorney objected. Appellant asserted, however, that he "would like to discuss this."

At that point the trial judge held a hearing outside of the jury's presence. The trial judge sustained appellant's objections and instructed the jury to "disregard the last question of the prosecutor[,] ... the defendant's uncounseled response to the same[, and] ... any references to any documents that are not in evidence ..." Additionally, the trial judge prohibited the State from placing exhibit 50 before the jury.

Upon further cross-examination, the prosecutor asked appellant, "It's a fact you left Buffalo, New York, because you were arrested and charged with first degree rape; isn't that true?" After appellant's attorney responded, "Object to that," the trial court overruled the objection. Appellant subsequently admitted that he had been arrested and charged with first degree rape in 1983 in New York. Appellant's attorney lodged no objection to this answer.

Appellant claims that this record shows that the "express desire on the part of the State [was] to inflame the minds of the jurors on the issue of future dangerousness." Based upon these errors, appellant "requests

---

**6.** This question concerned the sexual assault on

C____ H____ that occurred in Buffalo, New York.

that the judgment be reformed to reflect life imprisonment." The State argues that any errors were cured by the trial court's instructions and that appellant waived any other errors by both failing to object and by voluntarily testifying.

An instruction to disregard normally cures error concerning improper remarks and the admission of evidence. *Stoker,* 788 S.W.2d at 13; *Woods v. State,* 653 S.W.2d 1, 5 (Tex. Crim.App.1982). The trial judge expressly instructed the jury to disregard any references to any documents not in evidence, the prosecutor's questions, and even appellant's uncounseled responses. Any error concerning these matters was cured by the court's explicit instructions.

 Concerning appellant's arguments about his own responses and his attorney's general objection, we conclude that appellant's arguments are without merit. "[W]hen a defendant offers the same testimony as that objected to, or the same evidence is introduced from another source, without objection, the defendant is not in position to complain on appeal." *Stoker,* 788 S.W.2d at 13. Appellant voluntarily discussed the rape allegations stemming from the incident in New York. Therefore, we conclude that appellant is not in a position to complain on appeal and overrule appellant's point of error nine.

 In point of error twelve, appellant complains of the trial court's admission in evidence of State's exhibits 47 and 51 during the punishment phase of the trial. State's exhibits 47 and 51 are documents pertaining to appellant's ten-year deferred adjudication term for aggravated assault against T____ H____. Appellant argues that when he entered his plea in that case, he was not properly admonished according to the requirements of Article 26.13.[7] Appellant's conviction for aggravated assault was reversed by

this Court in *Hughes v. State,* 833 S.W.2d 137 (Tex.Crim.App.1992). However, the admission of these exhibits was harmless. *See* Tex.R.App.P. 81(b)(2).

In this case, the State not only admitted the judgment, but they also called T____ H____ to the stand. She testified that one afternoon in the summer between her eighth and ninth grade school years appellant came over to her mother's apartment. She answered the door, and spoke to appellant, whom she knew through his cousin. As she was preparing to go to the beach that afternoon and had to change clothes, she said goodbye and began shut the door. Appellant put his foot in the door and barged inside. T____ H____ then recounted the details of how appellant raped her. Appellant was subsequently arrested for aggravated sexual assault.

Between the time of his release on the sexual assault charge and his trial, appellant allegedly approached the victim, threatened her if she testified, and when she turned to run, fired a gun at her. Appellant took the stand in this cause and testified that neither the rape nor the assault ever took place. Most of the testimony concerning this issue involved not the assault charge but rather the question of whether appellant raped T____ H____, as well as another rape charge in the State of New York. The admission of the two convictions tend to corroborate T____ H____'s version of the story. However, the incremental harm of the admission of appellant's deferred adjudication for the aggravated assault is negligible when compared to the admission of appellant's deferred adjudication for aggravated sexual assault with a child. If the jury believed T____ H____ was credible and believed her story and if that belief was the result of the deferred adjudication, there is no incremental change in that belief based on the presence or absence of the second deferred adjudication documents.

---

7. Article 26.13 provides in pertinent part:
 (a) Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:
 (1) the range of the punishment attached to the offense;
 \* \* \* \* \* \*
 (b) No plea of guilty or of nolo contendere shall be accepted by the court unless it appears

that the defendant is mentally competent and the plea is free and voluntary.
 (c) In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.

Accordingly, the admission of appellant's judgment for aggravated assault is harmless beyond a reasonable doubt in this instance, and appellant's twelfth point of error is reversed. *See* Tex.R.App.P. 81(b)(2).

■ Appellant's points of error ten and eleven both concern jury argument by the prosecution. Since appellant's brief combines points ten and eleven for discussion, we will address them in combination. During closing argument on punishment, the prosecutor said "I suggest to you that the testimony of T___ H___ alone is enough to put the needle in this man's arm. And for that little girl to be brought down here and for [appellant's attorneys] to put her on trial again is not right." The trial court overruled appellant's objection to the final comment. Shortly thereafter, the prosecutor said "They [appellant's attorneys] have done nothing wrong. They're trying to protect their client. It's their job. It doesn't mean it's the right thing to do." The trial court sustained appellant's objection to the final comment and instructed

the jury to "disregard the last remark of the prosecutor and not consider it for any purpose whatsoever." Appellant's motion for mistrial, however, was overruled.[8]

■ In his tenth point of error, appellant complains of the trial court's act of overruling his initial objection. In his eleventh point of error, appellant complains of the trial court's refusal to grant his motion for mistrial. The substance of appellant's argument is that the prosecutor's comments were so prejudicial that an instruction to disregard could not cure the harm they caused. Additionally, appellant argues that the trial court's overruling of his initial objection compounded the error by functioning as "a license for the second, more direct, comment." The State responds that both comments were cured, the initial remark by the prosecutor's apology[9] and the latter remark by the court's instruction.

■ To be proper, jury argument must constitute either (1) a summation of the evi-

---

8. During the closing arguments by the State, Defense Counsel argued appellant did not present a future danger, and that in fact he could be rehabilitated. In response the State recalled the testimony of T___ H___. The following is the complete exchange between the prosecution, defense and trial court:

PROSECUTOR: ... Then he came down here to Houston, and lo and behold, God forbid, poor little old Preston, another dirty girl gets him and sets him up, another 13–year–old vixen entices him into the house. He didn't do it. There was another guy over there. I know the girl but I didn't do it.

But what about this new incident down here? You heard [T___ H___]'s testimony? I almost cried because I had to put her up here and make her relive the testimony again. It was me that called her up the day before her prom to tell her story again and it hurts to do that. But you have to hear that because that little girl was raped in her momma's bedroom and this man made her take a Bible our and swear on it, "I'll be your girlfriend." What kind of person does that? The kind of person who will never do an act of violence against a woman or anybody else?

I suggest to you that the testimony of [T___ H___] alone is enough to put the needle in this man's arm. And for that little girl to be brought down here and for [defense counsel] to put her on trial again is not right.

DEFENSE COUNSEL: Objection. He put her on the stand, Your Honor. I object to him raising the issue that we've done something wrong by protecting our client's rights, by ask-

ing a few simple questions on cross examination of the witness he put on the stand. I object to it.

PROSECUTOR: I apologize. I don't want to insinuate—

DEFENSE COUNSEL: I don't want his apology.

PROSECUTOR: I'm not saying [defense counsel] has done anything wrong.

DEFENSE COUNSEL: I object, Mr. Prosecutor. I have made an objection.

THE COURT: The objection will be overruled.

PROSECUTOR: They have done nothing wrong. They're trying to protect their client. It's their job. It doesn't mean it's the right thing to do.

DEFENSE COUNSEL: I object to him striking at my client over the shoulders of counsel by accusing us of doing something that ain't the right thing to do which was clearly within the rules, would have been malpractice if we hadn't done it. I request the jury be instructed to disregard counsel's remarks.

THE COURT: The objection will be sustained. Jury will disregard the last remark of the prosecutor and not consider it for any purpose whatsoever.

DEFENSE COUNSEL: I would move for further relief, Your Honor.

THE COURT: That will be denied.

9. The State cites, and we are aware of, no authority for the proposition that an apology from the prosecutor cures any type of error.

dence, or (2) a reasonable deduction from the evidence, or (3) a response to an opponent's argument, or (4) a plea for law enforcement. *Gomez v. State,* 704 S.W.2d 770, 771 (Tex. Crim.App.1985). While we agree that the prosecutor's arguments were not totally proper, we disagree with appellant's contention that a reformation of his sentence is required. This argument is unlike that made in *Gomez,* where the prosecutor implied that the defense attorney was willing to suborn perjury.[10] *Id.* at 772. In the instant case, the trial court certainly erred in overruling appellant's initial objection. The second comment, however, came almost immediately after the initial remark. Even though the trial judge told the jury to disregard only the "last remark," we read the record to indicate that the trial judge realized his error and promptly instructed the jury to disregard the prosecutor's argument. Appellant admits that the second remark was even "more direct." [11] We conclude that any error associated with the overruling of appellant's objection to the initial remark was cured by the prompt instruction to disregard the second remark and, accordingly, overrule appellant's points of error ten and eleven.

The judgment of the trial court is AFFIRMED. Appellant is permitted to file a motion for rehearing in this cause.

CLINTON, J., concurs in the result.

10. The dissenting opinion claims, citing our 'special concern' for jury argument in *Gomez,* that the "State's argument improperly struck at appellant over the shoulders of his counsel and the trial judge by overruling appellant's objection." On the contrary, we remain fully cognizant of that concern but conclude that *Gomez* is not dispositive of this case. In *Gomez,* the trial judge sustained the appellant's objection to the prosecutor's initial argument that appellant's counsel was paid "to manufacture evidence." 704 S.W.2d at 771. However, when the prosecutor further elaborated upon that argument by stating that appellant's counsel was paid "to get this defendant off the hook," the trial judge overruled appellant's objection. *Id.* Thus, the trial court left the jury with the final impression that such argument, that appellant's attorney would suborn perjury, was proper. In this case, the trial judge left the jury with the final impression that the argument was improper.

11. The dissenting opinion makes much of the first and second objections by defense counsel,

BAIRD, Judge, dissenting.

To resolve point of error ten, the majority concludes the jury disregarded a portion of the State's argument even though appellant's objection to that argument was overruled and the trial judge's subsequent curative instruction was limited to a separate portion of the State's argument. In other words, the majority holds the jury *disregarded* the trial judge's instruction and did *more* than the instruction required. Such a result oriented and perverse resolution of this point of error is without support from any authority from this or any other Court.

## I.

During the punishment phase of the trial the State presented the testimony of T‾‾ H‾‾, the complainant whom appellant had previously sexually assaulted. Thereafter, during the State's closing argument, the following exchange took place:

PROSECUTOR: I suggest to you that the testimony of T‾‾ H‾‾ alone is enough to put the needle in this man's arm. And for that little girl to be brought down here and for Mr. McCullough and Mr. Thomas to put her on trial again is not right.

DEFENSE COUNSEL: Objection. He put her on the stand, Your Honor. I

and states the "second" objection which was sustained by the trial court was only for the *last* argument of the Prosecutor. However, when we view the *entire* voir dire and exchange between the trial court and trial attorneys, it is not quite that clear. The exchange by the parties indicates the defense attorney believed the prosecutor was arguing defense counsel put T‾‾ H‾‾ on the stand. (However, the prosecutor had only minutes before said the opposite). He objected and in between all the arguments, the prosecutor attempted to make it clear that he had in fact called the witness. The trial court overruled defense counsel's objection, apparently believing it was clear who called the witness. *Then* when the prosecutor continued in his argument concerning defense counsel's behavior, the trial court sustained defense counsel's objection and instructed the jury to disregard the prosecutor's argument. From the record it appears the trial court's initial ruling concerned who put the girl on the stand, and the second ruling and instruction concerned defense counsel's cross-examination of the girl.

object to raising the issue that we've done something wrong by protecting our client's rights, by asking a few simple questions on cross-examination of the witness he put on the stand. I object to it.

PROSECUTOR: I apologize. I don't want to insinuate—

DEFENSE COUNSEL: I don't want his apology.

PROSECUTOR: I'm not saying Mr. McCullough or Mr. Thomas has done anything wrong.

DEFENSE COUNSEL: I object, Mr. Prosecutor. I have made an objection.

TRIAL COURT: *The objection will be overruled.*[1]

The State's argument continued as follows:

PROSECUTOR: They have done nothing wrong. They're trying to protect their client. It's their job. *It doesn't mean it's the right thing to do.*

DEFENSE COUNSEL: I object to him striking at my client over the shoulders of counsel by accusing us of doing something that ain't the right thing to do which was clearly within the rules, would have been malpractice if we hadn't done it. I request that the jury be instructed to disregard counsel's arguments.

TRIAL COURT: The objection will be sustained. Jury will disregard the *last* argument of the prosecutor and not consider it for any purpose whatsoever.

MR. McCULLOUGH: I would move for further relief, Your Honor.[2]

TRIAL COURT: That will be denied.

## II.

This Court has consistently recognized four categories of permissible jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and, (4) plea for law enforcement. *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1980), *and Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App. 1973). It is clear the instant jury argument

was not a summation of the evidence, a reasonable deduction from the evidence, or a plea for law enforcement. Therefore, the issue is whether the State's argument was an answer to the argument of appellant's counsel. My review of the record reveals that the State's argument was not in response to appellant's argument. Appellant's counsels did not refer to, or otherwise mention, the testimony of T___ H___ during their closing arguments. Therefore, the State's argument was not permissible.

It is axiomatic in our criminal jurisprudence that a defendant "[h]as the right to confront and fully cross-examine all persons who have testimony relevant to criminal charges." *Ex parte Grothe,* 687 S.W.2d 736, 739 (Tex.Cr.App.1984). *See, Davis v. Alaska,* 415 U.S. 308, 311, 94 S.Ct. 1105, 1108, 39 L.Ed.2d 347 (1974); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *and Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In the instant case, the State called T___ H___ as a witness. My review of the record reveals that appellant's counsel did nothing more than assert appellant's Sixth Amendment right of cross-examination. *See also,* Tex. Const. art. I § 10.

This Court has consistently "[s]hown a special concern for final arguments that constitute uninvited and unsubstantiated accusations of improper conduct directed at a defendant's attorney." *Gomez v. State,* 704 S.W.2d 770, 771 (Tex.Cr.App.1985). *See, Fuentes v. State,* 664 S.W.2d 333 (Tex.Cr. App.1984); *Boyde v. State,* 513 S.W.2d 588, 592 (Tex.Cr.App.1974); *and Bray v. State,* 478 S.W.2d 89 (Tex.Cr.App.1972). In *Boyde* and *Gomez* we noted that the general public does not understand the concept that defense attorneys are under an ethical obligation to represent the accused regardless of their personal opinion of their client. In *Boyde* we stated:

This general misunderstanding by the public serves to contribute to the prejudicial effect of an argument by a prosecutor

---

1. Unless otherwise indicated, all emphasis is supplied.

2. All parties had made a prior agreement that the court would interpret the phrase, "I would move for further relief," as a motion for mistrial.

which strikes at a member of the bar for representing a person accused of crime. *Boyde,* 513 S.W.2d at 592. I believe the State's argument improperly struck at appellant over the shoulders of his counsel and the trial judge erred by overruling appellant's first objection.

### III.

The State contends the error was cured when the prosecutor apologized after defense counsel's objection. This argument fails for two reasons. First, after offering the apology, the prosecutor continued the same objectionable argument. Secondly, we have never held that an apology cures error. The jury is required to follow the trial judge's ruling; an apology does not serve as a curative instruction.[3]

The State next contends, and the majority agrees, that the error in overruling appellant's objection to the *initial* argument was cured by the prompt instruction to disregard the *second* argument. This is a *non sequitur.* The first objection was overruled. Therefore, the trial judge *never* instructed the jury to disregard the State's initial improper argument. The trial judge's instruction was directed only to the second argument and should not be stretched to apply to the argument to which appellant first objected.

In *Orona v. State,* 791 S.W.2d 125, 129 (Tex.Cr.App.1990), we held: "We do not reach the question whether the improper argument was cured because the trial judge overruled the objection and for that obvious reason, *no instruction to disregard was given.*" Finally, in similar circumstances we have held "[t]hat a trial judge, by overruling an objection to an improper argument, puts 'the stamp of judicial approval' on the improper argument, thus magnifying the possibility for harm." *Good v. State,* 723 S.W.2d 734, 738 (Tex.Cr.App.1986) (quoting *Burke v. State,* 652 S.W.2d 788, 790 (Tex.Cr.App.1983). Therefore, the trial judge's subsequent instruction did not cure the error caused by the State's initial argument.[4]

Although the majority recognizes the trial judge overruled the State's first improper argument and specifically limited his instruction to the second argument, the majority chooses to "read the record to indicate that the trial judge realized his error and promptly instructed the jury to disregard the prosecutor's argument." *Hughes v. State,* 878 S.W.2d at 158 (Tex.Cr.App.1993) (opinion on rehearing). The majority's action is not supported either by the record or by our case law. "In the instant case, the appellant lodged a timely objection which the trial court overruled, permitting the jury to believe the argument was proper . . . ." *Orona,* 791 S.W.2d at 129. It is highly improper for a majority of this Court to acknowledge error and then search the record to find a separate objection and an unrelated curative instruction to avoid conducting a harm analysis.

### IV.

A harmless error analysis is required by Tex.R.App.P. 81(b)(2).[5] *See, Orona,* 791 S.W.2d at 129–130 (Rule 81(b)(2) applicable to improper jury argument) *and Griffin v. State,* 779 S.W.2d 431 (Tex.Cr.App.1989). Rule 81(b)(2) provides:

> If the appellate record in a criminal case reveals *error in the proceedings below,* the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that

---

3. The majority agrees. *Hughes v. State,* 878 S.W.2d at 158, fn. 10 (Tex.Cr.App.1993) (opinion on rehearing).

4. This is not to say that on every occasion where the State continues an improper jury argument, after an erroneous ruling by the trial court, the error cannot be cured. However, to cure such error the trial judge must do more than provide a cursory instruction to the jury to merely disregard the improper comment. *See, Long v. State,* 823 S.W.2d 259, 269 (Tex.Cr.App.1991).

5. Prior to the enactment of Tex.R.App.P. 81(b)(2) similar jury arguments constituted reversible error even when the trial judge sustained the objection and instructed the jury to disregard the argument. *Bell v. State,* 614 S.W.2d 122 (Tex.Cr.App.1981); *Lewis v. State,* 529 S.W.2d 533 (Tex.Cr.App.1975); *Boyde v. State,* 513 S.W.2d 588 (Tex.Cr.App.1974); *Jones v. State,* 205 S.W.2d 590 (Tex.Cr.App.1947). "In these cases, we found the argument so inflammatory as to be incurable by jury instruction." *Gomez,* 704 S.W.2d at 772.

the error made no contribution to the conviction or to the punishment.

In *Harris v. State,* 790 S.W.2d 568, 584 (Tex. Cr.App.1989), we recognized that Rule 81(b)(2) was the rhetorical and semantic equivalent of the harmless standard announced by the Supreme Court in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), where it was held that the State had the burden of proving beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.[6]

To perform a harmless error analysis an appellate court should consider six factors. In *Harris,* we held:

> In summary, a reviewing court in applying the harmless error rule should not focus upon the propriety of the outcome of the trial. Instead, an appellate court should be concerned with the integrity of the process leading to the conviction [or punishment]. Consequently, the court should [1] examine the source of the error, [2] the nature of the error, [3] whether or to what extent it was emphasized by the State, and [4] its probable collateral implications. Further, the court should consider [5] how much weight a juror would probably place upon the error. In addition, the court must also determine [6] whether declaring the error harmless would encourage the State to repeat it with impunity. In summary, the reviewing court should focus not on weight of the other evidence of guilt [or punishment], but rather on whether error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict.

*Harris,* 790 S.W.2d at 587–588.

The source of the error in the instant case involved an officer of the court, as it will in all cases of improper jury argument. When such an error is committed by one schooled and familiar with the intricacies of trial, the error is enhanced. Second, the nature of the error was to imply that appellant's trial counsel had engaged in improper conduct when, as previously noted, the conduct was constitutionally mandated. Third, when the objection was overruled, the State did not abandon the argument but rather continued along the same line thus emphasizing the perceived impropriety on the part appellant's trial counsel. In *Orona,* even though the defendant's objection to the improper jury argument was overruled, the State "completely abandoned its argument." However, we specifically noted: "If the State had sought to advance its argument after the objection, then an opposite result might be necessary." *Id.* 791 S.W.2d at 130. In the instant case, the prosecutor rather than abandoning the argument chose to advance the argument. Fourth, the probable collateral implications were that the jury would feel the cross-examination of T____ H____ was improper and should not have been undertaken. This implication would be drawn because the general public does not understand the concept that defense attorneys are under an ethical obligation to represent the accused regardless of their personal opinion of their client. *See, Boyde,* 513 S.W.2d at 592; *and Gomez,* 704 S.W.2d at 772. Fifth, while it is difficult to determine how much weight a juror would probably place upon the argument, any weight given to the argument was improper because appellant's trial counsel did nothing more than discharge their constitutional duty to provide appellant with effective assistance of counsel.

Finally and, I believe, most importantly in the instant case, we must determine whether declaring the error harmless would encourage the State to repeat the improper argument with impunity. Since the enactment of Rule 81(b)(2), we have repeatedly held im-

---

**6.** The U.S. Supreme Court in *Chapman* held, "Certainly error, constitutional error, in illegally admitting highly prejudicial evidence *or comments,* casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment." *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. at 828.

proper jury argument harmless.[7] Our past applications of Rule 81(b)(2) have effectively excluded improper jury argument from any meaningful appellate review. Our reluctance to reverse a case after finding improper jury argument only encourages the State to repeat the error with impunity. The vast majority of cases coming before this Court on direct appeal demonstrate that the State is repeatedly and consistently making improper jury arguments.

In light of the foregoing six factors of *Harris,* I cannot conclude beyond a reasonable doubt that the error did not contribute to the punishment assessed.

## V.

Almost twenty years ago in *Alejandro* we paused to note,

> [r]ecently we have had an alarming number of improper jury arguments to consider and it is hoped that the warning signal has been heard. Needless to say, the prosecutor sees all his trial work go for naught if the case has to be reversed because of improper jury argument.

*Alejandro,* 493 S.W.2d at 231.

The teachings of *Alejandro* should not be ignored. The majority's reluctance to penalize the State for improper jury argument only encourages the State to argue outside the four general categories of permissible jury argument. I would sustain point of error ten.[8]

OVERSTREET and MALONEY, JJ., join this opinion.

---

**7.** *See, Drew v. State,* 743 S.W.2d 207 (Tex.Cr.App. 1987); *Rose v. State,* 752 S.W.2d 529 (Tex.Cr. App.1987); *Bower v. State,* 769 S.W.2d 887 (Tex. Cr.App.1989); *Harris v. State,* 784 S.W.2d 5 (Tex. Cr.App.1989); *Griffin v. State,* 779 S.W.2d 431 (Tex.Cr.App.1989); *Jacobs v. State,* 787 S.W.2d 397 (Tex.Cr.App.1990); *Orona v. State,* 791 S.W.2d 125 (Tex.Cr.App.1990); *and Madden v. State* 799 S.W.2d 683 (Tex.Cr.App.1990).

**8.** Although appellant requests the Court to reform his sentence to confinement for life, the proper remedy is to remand this cause to the trial court.