COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-269-CR

 

 

BRADY RANDALL HALE                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 367TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

                                                    

MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Brady Randall Hale
appeals his conviction for sexual assault of a child under seventeen.  We affirm. 









Appellant, a Pilot Point
police officer, was charged with sexually assaulting C.G., a sixteen-year-old
girl.  A jury found appellant guilty of
one count of sexual assault and assessed his punishment at ten years= imprisonment.  This appeal
followed.  

In his first two issues,
appellant complains that the evidence is legally and factually insufficient to
support his conviction for two reasons: the testimony of C.G. was vague and not
credible because it conflicted with the testimony of the other witnesses, and
the other evidence supporting appellant=s conviction was either weak or not credible. 

The following evidence was
presented to the jury at guilt-innocence:

C.G. met appellant in the
summer of 2004 when he pulled her over for speeding.  When she saw appellant later at a local
restaurant, C.G. asked him if she could ride with him in his patrol car for a
school project.  Subsequently, appellant
and C.G. developed a romantic relationship. 
One evening, C.G. went to appellant=s house, but could not stay long because her mother was going to call;
however, soon after she left, appellant arranged to pick her up later and bring
her back to his house.  Once at appellant=s home, C.G. and appellant went into his bedroom and had sex. 








C.G. saw appellant
approximately a week later when she went to his house to hang out with
appellant, Darrell Wright, appellant=s roommate, and Kip Rose, another friend.  Appellant and C.G. had sex again that night
in appellant=s
bedroom.  Rose testified that on that
evening, he watched television in appellant=s house while C.G. and appellant were in appellant=s bedroom. Through a closed door, Rose heard Aa lot of laughing@ and Aheavy
breathing,@ C.G. Ama[d]e sexual references to her body parts, asking [appellant] if he
liked this or he liked that,@ and he also heard C.G. ask appellant if he Alike[d] that shaved cat,@ referring to her vagina.[2]  When appellant and C.G. came out of his room,
C.G. was wearing only a T-shirt and appellant was in boxer shorts.  Rose assumed that appellant and C.G. had just
engaged in sexual intercourse. 

On a separate occasion,
Officer Dennis Alatzas, appellant=s friend, went to appellant=s house to pick him up for a trip to Oklahoma.  Alatzas arrived at appellant=s home at 9 a.m., but Wright told him that appellant was busy in his
bedroom.  When appellant came out of the
bedroom, he was with C.G.  They were
dressed at that time.  

Alatzas and appellant then
left together for Oklahoma.  Alatzas
testified that Appellant received text messages on his cell phone during the
drive and showed one of them to Alatzas, which said, AAre we boyfriend/girlfriend, fuck buddies, or just friends?@  Alatzas said appellant
responded by text messaging, ANone of the above.@  Afterward, appellant and
Alatzas talked about C.G. and appellant said that Ashe was real good in bed.@  








Alatzas saw C.G. the next day
at appellant=s
house.  C.G. testified that on September
30, 2004 she began a sexual relationship with Wright. 

Subsequently, the Texas
Rangers began investigating C.G.=s involvement with Wright. 
After the allegations surfaced, Rose called appellant to ask him how to
respond to the Texas Rangers= questions.  Appellant told him
to Astick to the story . . . that [appellant and C.G.] . . .  never had sex.@  

When the Texas Rangers
interviewed C.G. initially, she admitted that she was sexually involved with
Wright, but denied having sex with appellant. 
C.G. later admitted, however, that she had had sex with appellant and
that she had previously denied it because she did Anot want to make [herself] look any worse than [she] already did.@  She stated that her sexual
relationship with appellant lasted approximately three to four weeks before she
became involved with Wright.

Texas Ranger Murphree
conceded on cross examination that C.G. said that she and appellant staged the
incident Ato get rid
of Rose@ by making him believe that she and appellant were involved, and that
nothing had happened.  Ranger Murphree
said that Rose told him that after appellant came out of the bedroom with C.G.
on one occasion, appellant asked Rose, AHow do you like my acting?@ 








C.G. also initially told the
Texas Rangers that she thought appellant was a Auser@ who did not
treat his friends well and that she hoped he would be Alocked up.@  C.G. testified, however, that she did not
remember making that statement and that, if she did, she was angry when she
said it.  

Ladina Poppe, Wright=s friend and appellant=s acquaintance, who was a convenience store clerk in Pilot Point,
spoke to Wright several times about his relationship with C.G.  On one occasion, Wright and appellant were
together in the store talking about Wright=s legal problems with C.G. and after they finished talking, appellant
told Poppe, Athat=s what [Wright] gets for fucking my sloppy seconds.@








Applying the appropriate
standards of review to the evidence in this case,[3]
we hold that the evidence is legally and factually sufficient to support
appellant=s guilt.[4]  C.G.=s testimony established that appellant sexually assaulted her and her
testimony was corroborated by Rose, Alatzas, and Poppe.[5]  We decline to substitute our judgment for
that of the jury on witness credibility or how much weight to give each witness=s testimony.[6]  Accordingly, we overrule appellant=s first and second points. 

In his third issue, appellant
asserts that the trial court abused its discretion by denying his motion for
continuance, which was based on the State=s late notice of its intent to present Alatzas=s testimony regarding the text message C.G. sent appellant.








On August 23, 2005, appellant
filed a request for timely notice of any extraneous offense or bad act evidence
that the State intended to offer during its case-in-chief.[7]  On June 20, 2006, six days before trial, the
State notified appellant that it intended to call Alatzas to testify regarding
the content of text messages that C.G. had sent appellant.  The next day, appellant filed a motion alleging
that the State had failed to timely disclose this information and sought a
continuance to allow appellant to properly prepare for trial.  At the hearing on the motion for continuance,
appellant=s trial
counsel asserted that as soon as he learned that the State intended to
introduce the content of the text messages, he contacted appellant=s cell phone service provider and learned that the company required
approximately six weeks to produce copies of telephone records and text
messages.  Appellant asserts that without
the telephone records, he was unable to effectively cross-examine Alatzas,
which prejudiced his defense.








The granting or denying of a
motion for continuance is within the sound discretion of the trial court.[8]  A defendant must show Aspecific prejudice to his defense@ to establish that the trial court abused its discretion in refusing
to grant a continuance.[9]  Examples of specific prejudice include unfair
surprise, an inability to effectively cross-examine witnesses, and the
inability to elicit crucial testimony from potential witnesses.[10]
 The assertion, however, that counsel did
not have time to adequately investigate for potential mitigating evidence
without any showing of harm fails to establish an abuse of discretion.[11]









Under the facts of this case,
we cannot find that the trial court=s failure to grant appellant=s motion for continuance resulted in prejudice to appellant.  Appellant has not shown Aspecific prejudice to his defense@ by the denial of his motion for a continuance; he merely asserts that
the trial court should have delayed the trial approximately six weeks so that
he could investigate appellant=s phone records to develop potentially mitigating or impeachment
evidence.  Also, the complained-of
testimony about the text messages does not support a finding that appellant
sexually assaulted C.G.; it shows that appellant denied having any sort of
relationship with her.  Therefore, the
complained-of evidence did not harm appellant. 
Moreover, the record shows that appellant=s trial counsel vigorously cross-examined Alatzas about the fact that
he had initially lied to the Texas Rangers about the relationship between C.G.
and appellant, that he had made an agreement with the State regarding his
testimony, and that he never saw appellant and C.G. commit a sexual act.
Because appellant has not shown that the denial of his motion for a continuance
caused Aspecific prejudice to his defense,@ we overrule appellant=s third issue.

In his fourth issue,
appellant asserts that the trial court abused its discretion by overruling his
objection to the State=s untimely
notice of its agreement with Alatzas in violation of the State=s prior agreement with appellant and appellant=s right to due process.

On August 23, 2005, appellant
filed a motion requesting the State to disclose any agreements it had with the
witnesses that would testify at trial. 
Prior to trial, and off the record, the prosecutor and appellant=s trial counsel made agreements regarding the State=s disclosure of witnesses.[12]  








On June 27, 2006, during the
State=s direct examination of Alatzas, the State presented appellant with a
copy of a memorandum of understanding between the State and Alatzas in which
Alatzas agreed to testify truthfully in appellant=s case and, in exchange, the State agreed not to prosecute him based
on the information he provided to the court. 
Appellant objected, asserting that the State had failed to provide him
with timely notice of the agreement; however, he did not assert that his due
process rights had been violated, he did not request a continuance, and he did
not ask the trial court to exclude any portion of Alatzas=s testimony.

To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion.[13]  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to rule.[14]  Preservation of error is a systemic
requirement that we should review on our own motion.[15]









In this case, appellant failed to raise his due process
argument in the trial court; therefore, he has forfeited that complaint on
appeal.  To the extent that appellant=s argument is
supported by his theory that the State breached its agreement to provide timely
notice of its agreement with its witnesses, the record does not contain any
evidence that the State entered into a disclosure agreement with
appellant.  Moreover, appellant was not
prejudiced by the State=s alleged late notice of its agreement
with Alatzas because he was able to effectively cross-examine Alatzas about the
agreement he made with the State and the trial court admitted the memorandum of
understanding between Alatzas and the State into evidence.  We overrule appellant=s fourth issue.

Having overruled
appellant=s four issues, we affirm the trial court=s judgment.                                                                    

PER CURIAM

 

PANEL
A:  CAYCE, C.J.; LIVINGSTON and GARDNER,
JJ.

 

LIVINGSTON,
J., concurs without opinion.

 

DO NOT PUBLISH        

Tex. R. App. P. 47.2(b)

 

DELIVERED:  May 24, 2007  
                               

 











[1]See Tex. R. App. P. 47.4.





[2]Officer
Rose testified that was his interpretation of the comment. 





[3]See Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005) (both setting out the
standard for legal sufficiency review); Watson v. State, 204 S.W.3d 404,
414 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005) (both setting out the factual sufficiency standard of review).





[4]See Tex. Penal Code Ann. '
22.011(a)(1)(A) & (c)(1) (Vernon Supp. 2006) (providing the elements for
sexual assault of a child). 





[5]The testimony
of a child victim alone is sufficient to support a conviction for sexual
assault.  See West v. State, 121
S.W.3d 95, 111 (Tex. App.CFort
Worth 2003, pet. ref=d); Empty
v. State, 972 S.W.2d 194, 196 (Tex. App.CDallas 1998, pet. ref=d). 





[6]See
Hanks v. State, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004); Cain
v. State, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997) (both noting that
the jury is sole trier of facts and judge of credibility).





[7]See Tex. R. Evid. 404(b).





[8]Renteria
v. State, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006);  Heiselbetz v. State, 906 S.W.2d 500, 511‑12
(Tex. Crim App. 1995).





[9]Renteria, 206
S.W.3d at 699; Heiselbetz, 906 S.W.2d at 511‑12.





[10]Janecka
v. State, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), cert.
Denied, 522 U.S. 825 (1997).





[11]Heiselbetz, 906
S.W.2d at  511‑12;  Duhamel v. State, 717 S.W.2d 80, 83
(Tex. Crim. App. 1986), cert. denied, 480 U.S. 926 (1987). 





[12]The
record is unclear regarding the substance of those agreements.  





[13]Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998), cert. denied, 526
U.S. 1070 (1999).





[14]Tex. R. App. P. 33.1(a)(2); Mendez v.
State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).





[15]Martinez
v. State, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); Hughes
v. State, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993), cert. denied,
511 U.S. 1152 (1994).