COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-269-CR

BRADY RANDALL HALE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Brady Randall Hale appeals his conviction for sexual assault of a child under seventeen.  We affirm.  

Appellant, a Pilot Point police officer, was charged with sexually assaulting C.G., a sixteen-year-old girl.  A jury found appellant guilty of one count of sexual assault and assessed his punishment at ten years’ imprisonment.
  This appeal followed.  

In his first two issues, appellant complains that the evidence is legally and factually insufficient to support his conviction for two reasons: the testimony of C.G. was vague and not credible because it conflicted with the testimony of the other witnesses, and the other evidence supporting appellant’s conviction was either weak or not credible. 

The following evidence was presented to the jury at guilt-innocence:

C.G. met appellant in the summer of 2004 when he pulled her over for speeding.  When she saw appellant later at a local restaurant, C.G. asked him if she could ride with him in his patrol car for a school project.  Subsequently, appellant and C.G. developed a romantic relationship.  One evening, C.G. went to appellant’s house, but could not stay long because her mother was going to call; however, soon after she left, appellant arranged to pick her up later and bring her back to his house.  Once at appellant’s home, C.G. and appellant went into his bedroom and had sex. 

C.G. saw appellant approximately a week later when she went to his house to hang out with appellant, Darrell Wright, appellant’s roommate, and Kip Rose, another friend.  Appellant and C.G. had sex again that night in appellant’s bedroom.  Rose testified that on that evening, he watched television in appellant’s house while C.G. and appellant were in appellant’s bedroom. Through a closed door, Rose heard “a lot of laughing” and “heavy breathing,” 
C.G. “ma[d]e sexual references to her body parts, asking [appellant] if he liked this or he liked that,” and he also heard C.G. ask appellant if he “like[d] that shaved cat,” referring to her vagina.
(footnote: 2)  When appellant and C.G. came out of his room, C.G. was wearing only a T-shirt and appellant was in boxer shorts.  Rose assumed that appellant and C.G. had just engaged in sexual intercourse. 

On a separate occasion, Officer Dennis Alatzas, appellant’s friend, went to appellant’s house to pick him up for a trip to Oklahoma.  Alatzas arrived at appellant’s home at 9 a.m., but Wright told him that appellant was busy in his bedroom.  When appellant came out of the bedroom, he was with C.G.  They were dressed at that time.  

Alatzas and appellant then left together for Oklahoma.  Alatzas testified that Appellant received text messages on his cell phone during the drive and showed one of them to Alatzas, which said, “Are we boyfriend/girlfriend, fuck buddies, or just friends?”  Alatzas said appellant responded by text messaging, “None of the above.”  Afterward, appellant and Alatzas talked about C.G. and appellant said that “she was real good in bed.”  

Alatzas saw C.G. the next day at appellant’s house.  C.G. testified that on September 30, 2004 she began a sexual relationship with Wright. 

Subsequently, the Texas Rangers began investigating C.G.’s involvement with Wright.  After the allegations surfaced, Rose called appellant to ask him how to respond to the Texas Rangers’ questions.  Appellant told him to “stick to the story . . . that [appellant and C.G.] . . .  never had sex.”  

When the Texas Rangers interviewed C.G. initially, she admitted that she was sexually involved with Wright, but denied having sex with appellant.  C.G. later admitted, however, that she had had sex with appellant and that she had previously denied it because she did “not want to make [herself] look any worse than [she] already did.”  She stated that her sexual relationship with appellant lasted approximately three to four weeks before she became involved with Wright.

Texas Ranger Murphree conceded on cross examination that C.G. said that she and appellant staged the incident “to get rid of Rose” by making him believe that she and appellant were involved, and that nothing had happened.  Ranger Murphree said that Rose told him that after appellant came out of the bedroom with C.G. on one occasion, appellant asked Rose, “How do you like my acting?” 

C.G. also initially told the Texas Rangers that she thought appellant was a “user” who did not treat his friends well and that she hoped he would be “locked up.”  C.G. testified, however, that she did not remember making that statement and that, if she did, she was angry when she said it.  

Ladina Poppe, Wright’s friend and appellant’s acquaintance, who was a convenience store clerk in Pilot Point, spoke to Wright several times about his relationship with C.G.  On one occasion, Wright and appellant were together in the store talking about Wright’s legal problems with C.G. and after they finished talking, appellant told Poppe, “that’s what [Wright] gets for fucking my sloppy seconds.”

Applying the appropriate standards of review to the evidence in this case,
(footnote: 3) we hold that the evidence is legally and factually sufficient to support appellant’s guilt.
(footnote: 4)  C.G.’s testimony established that appellant sexually assaulted her and her testimony was corroborated by Rose, Alatzas, and Poppe.
(footnote: 5)  
We decline to substitute our judgment for that of the jury on witness credibility or how much weight to give each witness’s testimony.
(footnote: 6)  Accordingly, 
we overrule appellant’s first and second points. 

In his third issue, appellant asserts that the trial court abused its discretion by denying his motion for continuance, which was based on the State’s late notice of its intent to present Alatzas’s testimony regarding the text message C.G. sent appellant.

On August 23, 2005, appellant filed a request for timely notice of any extraneous offense or bad act evidence that the State intended to offer during its case-in-chief.
(footnote: 7)  On June 20, 2006, six days before trial, the State notified appellant that it intended to call Alatzas to testify regarding the content of text messages that C.G. had sent appellant.  The next day, appellant filed a motion alleging that the State had failed to timely disclose this information and sought a continuance to allow appellant to properly prepare for trial.  At the hearing on the motion for continuance, appellant’s trial counsel asserted that as soon as he learned that the State intended to introduce the content of the text messages, he contacted appellant’s cell phone service provider and learned that the company required approximately six weeks to produce copies of telephone records and text messages.  Appellant asserts that without the telephone records, he was unable to effectively cross-examine Alatzas, which prejudiced his defense.

The granting or denying of a motion for continuance is within the sound discretion of the trial court.
(footnote: 8)  A defendant must show “specific prejudice to his defense” to establish that the trial court abused its discretion in refusing to grant a continuance.
(footnote: 9)  Examples of specific prejudice include unfair surprise, an inability to effectively cross-examine witnesses, and the inability to elicit crucial testimony from potential witnesses.
(footnote: 10)  The assertion, however, that counsel did not have time to adequately investigate for potential mitigating evidence without any showing of harm fails to establish an abuse of discretion.
(footnote: 11) 

Under the facts of this case, we cannot find that the trial court’s failure to grant appellant’s motion for continuance resulted in prejudice to appellant.  Appellant has not shown “specific prejudice to his defense” by the denial of his motion for a continuance; he merely asserts that the trial court should have delayed the trial approximately six weeks so that he could investigate appellant’s phone records to develop potentially mitigating or impeachment evidence.  Also, the complained-of testimony about the text messages does not support a finding that appellant sexually assaulted C.G.; it shows that appellant denied having any sort of relationship with her.  Therefore, the complained-of evidence did not harm appellant.  Moreover, the record shows that appellant’s trial counsel vigorously cross-examined Alatzas about the fact that he had initially lied to the Texas Rangers about the relationship between C.G. and appellant, that he had made an agreement with the State regarding his testimony, and that he never saw appellant and C.G. commit a sexual act. Because appellant has not shown that the denial of his motion for a continuance caused “specific prejudice to his defense,” we overrule appellant’s third issue.

In his fourth issue, appellant asserts that the trial court abused its discretion by overruling his objection to the State’s untimely notice of its agreement with Alatzas in violation of the State’s prior agreement with appellant and appellant’s right to due process.

On August 23, 2005, appellant filed a motion requesting the State to disclose any agreements it had with the witnesses that would testify at trial.  Prior to trial, and off the record, the prosecutor and appellant’s trial counsel made agreements regarding the State’s disclosure of witnesses.
(footnote: 12)  

On June 27, 2006, during the State’s direct examination of Alatzas, the State presented appellant with a copy of a memorandum of understanding between the State and Alatzas in which Alatzas agreed to testify truthfully in appellant’s case and, in exchange, the State agreed not to prosecute him based on the information he provided to the court.  Appellant objected, asserting that the State had failed to provide him with timely notice of the agreement; however, he did not assert that his due process rights had been violated, he did not request a continuance, and he did not ask the trial court to exclude any portion of Alatzas’s testimony.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.
(footnote: 13)  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.
(footnote: 14)  Preservation of error is a systemic requirement that we should review on our own motion.
(footnote: 15) 

In this case, appellant failed to raise his due process argument in the trial court; therefore, he has forfeited that complaint on appeal.  To the extent that appellant’s argument is supported by his theory that the State breached its agreement to provide timely notice of its agreement with its witnesses, the record does not contain any evidence that the State entered into a disclosure agreement with appellant.  Moreover, appellant was not prejudiced by the State’s alleged late notice of its agreement with Alatzas because he was able to effectively cross-examine Alatzas about the agreement he made with the State and the trial court admitted the memorandum of understanding between Alatzas and the State into evidence.  We overrule appellant’s fourth issue.

Having overruled appellant’s four issues, we affirm the trial court’s judgment. 
                                                            

PER CURIAM

PANEL A:  CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

LIVINGSTON, J., concurs without opinion.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 24, 2007 
 
 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Officer Rose testified that was his interpretation of the comment. 

3:
See
 
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005) (both setting out the standard for legal sufficiency review)
; 
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005) 
(both setting out the factual sufficiency standard of review)
.

4:
See 
Tex. Penal Code Ann.
 § 22.011(a)(1)(A) & (c)(1) (Vernon Supp. 2006) (providing the elements for sexual assault of a child). 

5:
The testimony of a child victim alone is sufficient to support a conviction for sexual assault.  
See West v. State
, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet. ref’d); 
Empty v. State
, 972 S.W.2d 194, 196 (Tex. App.—Dallas 1998, pet. ref’d). 

6:
See Hanks v. State
, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004); 
Cain v. State
, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997) (both noting that the jury is sole trier of facts and judge of credibility).

7:
See
 
Tex. R. Evid.
 404(b).

8:
Renteria v. State
, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006); 
 Heiselbetz v. State
, 906 S.W.2d 500, 511-12 (Tex. Crim App. 1995).

9:
Renteria
, 206 S.W.3d at 699; 
Heiselbetz
, 906 S.W.2d at 511-12.

10:
Janecka v. State
, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), 
cert. Denied
, 522 U.S. 825 (1997).

11:
Heiselbetz
, 906 S.W.2d at  511-12;  
Duhamel v. State
, 717 S.W.2d 80, 83 (Tex. Crim. App. 1986), 
cert. denied
, 480 U.S. 926 (1987). 

12:
The record is unclear regarding the substance of those agreements.  

13:
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998), 
cert. denied, 
526 U.S. 1070 (1999).

14:
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

15:
Martinez v. State
, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); 
Hughes v. State
, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993), 
cert. denied
, 511 U.S. 1152 (1994).