Opinion issued October 2, 2008 

 











In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-05-00809-CR

____________


GODSPOWER JOSEPH ESSANG, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from County Criminal Court at Law No. 11

Harris County, Texas

Trial Court Cause No. 1278139






MEMORANDUM OPINION


 A jury convicted appellant, Godspower Joseph Essang, of misdemeanor
terroristic threat, assessed punishment at 180 days in jail, and recommended that the
sentence be suspended, after which the trial court suspended appellant's sentence for
a period of two years of community supervision. See Tex. Penal Code Ann.
§ 22.07(a)(2) (Vernon Supp. 2008). We determine (1) whether the evidence was
legally sufficient to show intent and (2) whether the trial court abused its discretion
in admitting the complainant's testimony regarding two reports that she had received
of previous incidents involving appellant. We affirm.

Facts

 At the time of the offense, appellant was a commercial tenant in Sharpstown
shopping mall, where the complainant, Nina Daniels, worked as the management
office receptionist. As part of her job, the complainant was responsible for taking
calls and dispatching mall security. 

 On the day of the offense, the electric company turned off the electricity to
appellant's store. After his power had been disconnected, appellant called the
complainant and said, "Nina, you motherf-----s turned off my lights again." The
complainant tried to calm appellant down as she "always" did because he was
"always calling angry." (1) Shortly afterwards, appellant called the complainant a
second time and said, "You guys have f----d with me the last time. I'm going to come
upstairs and kill everybody." When the complainant asked if appellant was "talking
to [her]," he responded, "Mark my words, I'm going to kill every motherf----r up
there." Appellant had always been nice to her and had never threatened her before,
and the complainant "got scared" and feared for her life when appellant said this
because "he's fought people" in the mall and because she had heard that "he had a
gun in the store."

 When the complainant saw over a security monitor that appellant was coming
up to her office, she called Maria Sanchez, head of mall security. Sanchez instructed
the complainant to hide. The complainant was crying and shaking and was scared,
skittish, very nervous, and in "a bad condition." Mall marketing director, Michica
Guillory, arrived upstairs while appellant was confronting Sanchez in the office; chief
of engineering and operations manager, Scott Rucker, entered soon afterwards. 
Guillory, Rucker, and Sanchez observed that appellant was "very, very upset," "very
irate," obviously seething with anger, "not rational," screaming, "breathing [so] very
heavily" that his shoulders were heaving and his breath could be heard, "ranting and
raving," cursing, and "speaking in an extremely stern voice." Rucker and Sanchez 
heard appellant say repeatedly that he was either going to or wanted to "kill every
motherf----r" in the office, that he would kill the police, and that they "were going to
regret it." Guillory eventually calmed appellant down and escorted him out of the
office. At the complainant's request, Sanchez locked the office doors as she left
because the complainant was "afraid he's going to come back up here."

 Soon thereafter, the complainant saw appellant returning to the office. The
complainant had Sanchez call the police, who came and arrested appellant. Officer
Ramon Perez searched appellant, but found no weapon. Appellant did not resist
arrest. However, he called the complainant while the police were processing him and 
told her, among other things, "that she was going to regret it."

 Appellant maintained at trial that he had gone to the management office to
discuss the electricity situation with the leasing manager and denied having
threatened to kill anyone.

The Law of Terroristic Threat

 As alleged and charged in this case, a person commits the offense of terroristic
threat "if he threatens to commit any offense involving violence to any person . . .
with intent to . . . place any person in fear of imminent serious bodily injury." Tex.
Penal Code Ann. § 22.07(a)(2) (Vernon Supp. 2008). It is not necessary that the
defendant carry out, or even be able to carry out, the alleged threat, but only that he
have the necessary intent to induce fear of imminent serious bodily injury in the
complainant. Zorn v. State, 222 S.W.3d 1, 3 (Tex. App.--Tyler 2002), pet dism'd,
Zorn v. State, No. PD-0936-02, 2005 WL 3307042 (Tex. Crim. App. Dec. 7, 2005)
(mem. op., not designated for publication). The requisite intent for terroristic threat
requires that the defendant have "the conscious object or desire to" engage in the
conduct of threatening to commit a violent act against the complainant and cause the
resulting fear of serious bodily injury in the complainant. Tex. Penal Code Ann.
§§ 6.03(a) (Vernon 2003), 22.07(a)(2) (Vernon Supp. 2008). Intent can be inferred
from the acts, words, and conduct of the accused, but cannot be determined only from
what the complainant thought at the time of the offense. Dues v. State, 634 S.W.2d
304, 305 (Tex. Crim. App. 1982); Turner v. State, 600 S.W.2d 927, 929 (Tex. Crim.
App. 1980).

Legal Sufficiency of the Evidence

 In point of error three, appellant argues that "the evidence was insufficient to
support appellant's conviction for terroristic threat," specifically, to show the
requisite intent. We interpret this to be a legal-sufficiency challenge because of
appellant's request that we review all of the evidence "in the light most favorable to
the verdict" and the relief sought by appellant--that we "reverse [. . .] appellant's
conviction and order a judgment of acquittal."

A. Standard of Review

 In reviewing the legal sufficiency of the evidence to support a criminal
conviction, we view the evidence in the light most favorable to the verdict and
determine whether a rational fact-finder could have found the essential elements of
the crime beyond a reasonable doubt. Drichas v. State, 175 S.W.3d 795, 798 (Tex.
Crim. App. 2005). The jury is the sole judge of the facts, the credibility of the
witnesses, and the weight to be given to each witness's testimony. Penagraph v.
State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).

B. Discussion Appellant admits that there is some "evidence that appellant did in fact threaten
to kill the complainant as alleged." Appellant nonetheless contends that the evidence
is legally insufficient to show intent because

 the appellant [n]ever harbored the intent to place [the
complainant] in the requisite fear. [The complainant]
understood that the appellant had been volatile, but at one
point believed that she had successfully calmed him down. 
This does not sound like a man who had the intent to
induce fear in the complainant. 


 Furthermore, the appellant's actions were totally
inconsistent with a person who had intended to frighten
another person. The appellant must have been aware that
[the complainant] had access to the mall security, and that
she could order his arrest at anytime. The appellant made
no attempt to evade the mall's security officers, or even
resist when he was arrested.

 This evidence is not viewed in the light most favorable to the verdict, and we
thus will not consider it in our legal-sufficiency review. See King v. State, 29 S.W.3d
556, 562 (Tex. Crim. App. 2000) ("In evaluating the legal sufficiency of the evidence,
we must view the evidence in the light most favorable to the verdict . . . ."). 
Additionally, it was Guillory, not the complainant, who testified that she appeared to
have succeeded in calming down appellant.

 In any event, the jury could rationally have based its implicit finding of intent
on the following evidence, which is viewed in the light most favorable to the verdict:
(1) appellant's telling the complainant that "I'm going to come upstairs and kill
everybody" and (repeated within the hearing of two others) that "I'm going to kill
every motherf----r up there"; (2) appellant's general violent temper; (3) the reasonable
inference that, because the complainant was the contact person for security requests
at the mall, appellant should have known that the complainant would have received
the reports of the two prior incidences concerning his gun possession and physical
altercations at the mall; (4) appellant's extremely angry and volatile demeanor on the
day in question; (5) the complainant's visible reaction of fear; (6) the fact that
appellant had never threatened the complainant personally before, but did so
repeatedly that day; and (7) the complainant's testimony that appellant had threatened
to kill "specific people" before and was "always threaten[ing]" the partner who
owned the mall. 

 We hold that this is some evidence that the jury could have believed beyond
a reasonable doubt proving that appellant intended to induce fear of death in the
complainant. See Cook v. State, 940 S.W.2d 344, 347-48 (Tex. App.--Amarillo,
1997, pet. ref'd) (holding that evidence was legally sufficient to show intent required
for terroristic threat when appellant left, in rapid succession, three phone messages
threatening serious injury); Clark v. State, No. 01-03-00809-CR, 2001 WL 726003,
at *2 (Tex. App.--Austin June 29, 2001, no pet.) (memo. op.) (holding that evidence
was legally sufficient to support intent element of terroristic threat when appellant,
"storm[ing]" back into complainant's office to demand property for second time, was
"angry, extremely agitated, and acting 'erratic,'" threatened use of deadly force if
property was not returned, acted as if he was concealing something behind his back
and quickly flashed something from his wallet that complainant could not make out,
returned to office third time and was arrested, and told arresting officers that he
would "use whatever force was necessary to recover his lost property"); cf. Guardado
v. State, No. 14-01-01142-CR, 2002 WL 31526070, at *4 (Tex. App.--Houston
[14th Dist.] Nov. 14, 2002, pet. ref'd) (memo. op.) (in concluding that evidence was
legally sufficient to show intent to induce fear of imminent serious bodily injury in
wife, considering, among other matters, appellant's three prior threats of violence
toward family members, including wife). We thus hold that the evidence is legally
sufficient to show the requisite intent.

 We overrule point of error three.

Admissibility of the Evidence

 In his first and second points of error, appellant contends that "the trial court
committed reversible error in allowing [the complainant] to testify" regarding two
incidents involving appellant because the complainant "had no firsthand knowledge
of the events in question."

A. Standard of Review

 We review a trial court's ruling on the admissibility of evidence for abuse of
discretion. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op.
on rehearing). Accordingly, the trial court's ruling should be upheld if it is
reasonably supported by the record and is correct under any theory of law applicable
to the case. Ramos v. State, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008); Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). 

B. Discussion


 Appellant's complaints concern the admission of the complainant's testimony
of phoned-in reports of two incidents involving appellant at the mall: one that she
received on June 8, 2004 ("the June incident report"), and another that she received
on September 15, 2004 ("the September incident report"). The June incident report
was that appellant was involved in a physical altercation at the mall. The September
incident report was that appellant had a gun in his store. The trial court admitted the
complainant's testimony of the two incident reports, but instructed the jury in the
charge that any evidence from any witness concerning other acts of appellant could
be considered only in determining appellant's intent. (2)

 Appellant complains that the trial court abused its discretion in admitting the
complainant's testimony of the June incident report (the subject of point of error one)
and of the September incident report (the subject of point of error two) because she
did not know "whether the allegation[s] [were] even true or not" and "had no first
hand knowledge of the events in question." See Tex. R. Evid. 602 ("A witness may
not testify to a matter unless evidence is introduced sufficient to support a finding that
the witness has personal knowledge of the matter."). 

C. Waiver and Curing of Any Harm

 The State contends that appellant waived points of error one and two or that
any harm resulting from the admission of the complainant's challenged testimony was
cured by the admission of other testimony without objection. We first consider these
threshold matters.

 1. The Initial Objection

 Appellant first objected to the complainant's lack of personal knowledge when
she testified that she was afraid of appellant "[b]ecause he's done things within the
mall. He's fought people. From what I heard, he had a gun in the store." (Emphasis
added.) The trial court overruled this objection, preserving the challenge to the
admission of the complainant's very general testimony given at that point. See Tex.
R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1).

 2. Admission of Testimony of the June Incident Report (Relevant to
Point of Error One)


 After appellant's objection had been overruled, the State directed the
complainant's attention to the June incident report. Appellant asked to approach the
bench. A discussion then proceeded outside the jury's presence. The parties and the
trial court discussed whether the statements made by the complainant constituted
testimony regarding appellant's prior bad acts excludable under Texas Rules of
Evidence 404(b) or 403. (3) See Tex. R. Evid. 403, 404(b). The following discussion
then ensued:

 Appellant: She did not observe it, Your Honor, she does not have
firsthand knowledge of the issue. She was not there. She
was not a witness to the case. And the case was charged
and my client went to court, municipal court, and the case
was dismissed. This is the dismissal. So it means what
they are trying to do, every encounter with the police is,
they are trying to equate that to [a] prior bad act. That
would confuse the jury and do prejudice to my client.


 Court: Well, I think there's confusion here. She can testify as to
prior bad acts [of] which she has personal knowledge. 
She can't testify they were a violation of the law or
anything like that. But she can testify as to if she has
personal knowledge of prior bad acts which impact her
feelings with regard to what he said that day. She can't
testify what the court did or anything about a court
proceeding.


 Appellant: She was not a witness. She did not witness it and she does
not have firsthand knowledge of what [the State] is trying
to make her testify to.


 Court: If she testifies to something outside of her knowledge, then
that would be subject to an objection that she's testifying
to hearsay, not subject to a motion to quash, just based
upon prior bad acts.

(emphasis added).

 The trial court then allowed appellant to take the complainant on voir dire. On
voir dire, appellant elicited an admission that the complainant had no personal
knowledge of the underlying June incident. Appellant's counsel then objected,
"Hearsay. She didn't witness any of the things that went on." (Emphasis added.) The
following discussion then occurred:


 State: Your Honor, we can limit our questioning to what she has
dispatched police to.

 

 Court: We need to limit--when [the prosecutor] asks you a
question about what happened, limit it to what you know
personally, you have seen, not something someone else told
you happened.

 

 Witness: Yes, sir.

 

 Court: Because that's hearsay, okay?

 

 Witness: Yes, sir.

 

 Court: So when she asks you a question about that, you answer as
to what you have seen or heard yourself, not what
somebody told you.

 

 Witness: Yes, sir.

 

 Court: Okay?

 

 Witness: Yes, sir.

 

 Court: Is everybody happy with that now? 

 

 State: Yes, sir.


 Court: I'm going to bring the jury back in.


(emphasis added). This colloquy indicates that, by the time of the trial court's ruling
after the voir dire examination, appellant was objecting to hearsay (4) and lack of
personal knowledge. It was apparently to address these last objections that the trial
court instructed the complainant not to testify to matters outside her knowledge. 

 After the trial court had instructed the witness as indicated above, her
testimony continued, without objection by appellant, as follows:

 State: Do you recall dispatching security to Mr. Essang's
store on June the 8th, 2004?

 

 Complainant: Yes, ma'am.

 

 State: For what reason did you dispatch security?

 

 Complainant: There was a physical disturbance, there was a fight
going on.

 

 State: Who did you receive the call from?

 

 Complainant: I received a call from one of the tenants.

 

 State: Not Mr. Essang?

 

 Complainant: No, no.

 

 State: And what did you do--you dispatched police in
response to what?

 

 Complainant: I dispatched the security officers first because that's
what I'm supposed to do. . .


 . . .


 State: Why in this instance, on June the 8th, did you
dispatch the police officers as well as security?


 Complainant: Because it was a physical.


 State: Physical fight?


 Complainant: It was a physical. And I've been ordered if there is
a physical, from what I've been taught, if there's a
physical, you are supposed to dispatch security first,
then Houston Police Department, which we have on
property.

(emphasis added). She also confirmed, again without objection, that she had
dispatched security to appellant's store on two occasions: one involving a gun, and
one involving a fight.

 From the above discussion, the following matters are evident:

 1. appellant preserved an objection, based on lack of personal
knowledge, to the complainant's initial, very general testimony
that he had "fought people" in the mall and had "had a gun in the
store." 


 2. thereafter, after the bench conference and voir dire examination,
the trial court in effect sustained appellant's objection to the
complainant's lack of personal knowledge by instructing her not
to testify to matters outside of her knowledge. 


 3. when the trial court asked the parties if they were content with
this ruling, appellant remained silent. 


 4. appellant did not object when the complainant then continued
testifying about the June incident report, including her description
of the nature of the June incident as a "physical disturbance" and
a "fight."


 We hold as follows. Error, if any, that occurred when the complainant initially
testified very generally that appellant had "fought people" in the mall was cured by
the complainant's further testimony, given after the trial court's favorable ruling at
the end of the voir dire examination and without objection by appellant, to the same
matter. See Hudson v. State, 675 S.W.2d. 507, 511 (Tex. Crim. App. 1984); see also
Hughes v. State, 878 S.W.2d 142, 156 (Tex. Crim. App. 1992). Likewise, appellant
has waived any challenge on appeal to the complainant's post-bench-conference
testimony of the June incident report because that testimony was elicited pursuant to
a ruling favorable to him, he acquiesced in that ruling, and he did not object to the
testimony that followed. See Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Evid. 103(a)(1). 

 We thus overrule point of error one.

 3. Admission of Testimony of the September Incident Report 
(Relevant to Point of Error Two)


 Likewise, appellant allowed testimony of the incident giving rise to the
September incident report to be elicited through the complainant's later testimony,
without objection, and through the testimony of other witnesses whose testimony he
does not challenge on appeal.

 For example, the complainant testified on direct examination, right after the
bench conference referenced above and without objection, that she had dispatched
police officers to appellant's store based upon "several calls, to be honest" that she
had received from his contractor in which the contractor "wanted to report that
[appellant] had a gun in his store." She also confirmed, again without objection, that
she had dispatched security to appellant's store on two occasions: one involving a
gun, and one involving a fight. (5)

 Additionally, State's witness Guillory testified on direct examination, without
objection, that "there's a history of allegations that [appellant] has a gun, you need
to be careful, watch out" so that "people think that when he's upset, there's a weapon
involved." State's witness Sanchez also testified on direct that she had dealt with
complaints from others in past that appellant "had threatened them with guns," she
described the September incident, and (on cross-examination) she recounted a third
incident in which appellant had threatened someone with a gun. And on cross-examination of Officer Perez, appellant himself elicited testimony (1) of an incident
in which appellant had threatened to shoot a contractor and (2) that "[t]here are other
times that there was a threat involving [appellant's] using a weapon." Appellant does
not complain on appeal of this testimony by Sanchez, Guillory, and Officer Perez.

 Assuming without deciding that the trial court erred in overruling appellant's
objection to the complainant's initial, general testimony that "he had a gun in the
store," we hold that any harm caused by that ruling was cured by appellant's
subsequent failure to object to the admission of substantively similar testimony from
the complainant and other witnesses. See Hughes, 878 S.W.2d at 156; see also
Hudson, 675 S.W.2d. at 511. We further hold that appellant has waived any
complaint about the complainant's post-bench-conference testimony of the September
incident report because he failed to object to it and, when he finally objected, he
obtained what he requested. See Tex. R. Evid. 103(a)(1); Tex. R. App. P.
33.1(a)(1)(A). 

 We thus overrule point of error two.

Conclusion

 We affirm the judgment of the trial court. 



 Tim Taft

 Justice


Panel consists of Chief Justice Radack and Justices Taft and Keyes.


Do not publish. See Tex. R. App. P. 47.2(b). 

1. Other witnesses corroborated that appellant was a violent person and that he
had behaved angrily or unpleasantly in past.
2. The instruction read:


 "In reference to evidence, if any, that the defendant has
previously participated in recent transactions or acts, other than
that which is charged in the information in this case, you are
instructed that you can not consider such other transactions or
acts, if any, for any purpose unless you find and believe beyond
a reasonable doubt that the defendant participated in such
transactions or committed such acts, if any; and even then you
may only consider the same for purposes of determining intent,
if it does, and for no other purpose." (Emphasis added.)


 During trial, the court instructed the jury that testimony from any witness of
appellant's prior bad acts could not be considered as evidence of whether they
occurred, but only as evidence as to why the witness felt the way that he or she
did.
3. Appellant does not assert challenges on appeal based on Rules of Evidence 403
or 404.
4. Appellant does not raise a hearsay challenge on appeal.
5. Appellant did not object again to the complainant's testimony until the
conclusion of the State's questioning on the September incident report:

State: Based on that day, on January 4th, 2005, because of what
you knew, did that affect the way you reacted that day?


Complainant: Yes.


State: Because you knew this person was violent, you knew he
had been known to carry guns; is that correct?


Complainant: Yes.


Appellant: Objection, Your Honor, there's no--

 

Court: Sustained.


 (emphasis added).


 Because this objection was sustained and appellant did not request an
instruction to disregard, there is no adverse ruling to consider on appeal, and
the complaint is waived; additionally, appellant did not move to strike the
testimony, which had already been elicited and was before the jury. See Tex.
R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a)(1); See Moff v. State, 131 S.W.3d
485, 489 (Tex. Crim. App. 2004).